United States District Court
Eastern District of New York

----------------------------------X

HUMBERTO RESTREPO, as Chairman of
the Joint Industry Board of the
Electrical Industry                        **Memorandum and Order**

        Petitioner,                        No. 24-cv-8140 (KAM)(TAM)

   - against -

MECHANICAL ELECTRICAL CORP.

        Respondent.

----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

On November 22, 2024, Petitioner Humberto Restrepo as Chairman of the Joint Industry Board of the Electrical Industry ("Petitioner") commenced this action to enforce an Arbitration Award issued in Petitioner's favor against Respondent Mechanical Electrical Corporation ("Respondent" or "Mechanical Electrical") pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3). (ECF No. 1, Petition ("Pet.") ¶ 1.) Respondent was served with process on December 6, 2024, but has failed to appear, answer or otherwise respond to the Petition. (ECF No. 8, Aff. of Service.) Presently before the Court is Petitioner's motion to construe the Petition as an unopposed motion for summary judgment.

(ECF No. 9, Def. Mot.)  For the reasons set forth below, the motion to treat the Petition as an unopposed motion for summary judgment is **GRANTED**, the Arbitration Award is **CONFIRMED**, and Judgment is awarded to Petitioner.

## FACTUAL BACKGROUND

Petitioner is the Chairman of the Joint Industry Board of the Electrical Industry ("JIB"), which is the administrator of "various employee benefit multi-employer plans[1] [(the "ERISA Plans")] established and maintained pursuant to a collective bargaining agreement [(the "CBA")] between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO, and certain employer associations and independent or unaffiliated employers in the electrical and other related industries," including Respondent Mechanical Electrical. (ECF No. 1, Pet. ¶ 4.) Petitioner is an administrator and fiduciary within the meaning of Sections 3(16)(A)(i) and 3(21)(A) of ERISA.  29 U.S.C. §§ 1002(16)(A)(i), 1002(21)(A).    (ECF No. 1, Pet. ¶ 4.)

---

[1] The ERISA Plans are employee benefit plans within the meaning of § 3(3) of ERISA, 29 U.S.C. 1002(3), and multi-employer plans within the meaning of § 3(37) of ERISA, 29 U.S.C. 1002(37).  (ECF No. 1, Pet. ¶ 6.)  They include, "the Pension, Hospitalization and Benefit Plan of the Electrical Industry (the "PHBP"), the Dental Benefit Fund of the Electrical Industry ("DEN"), the Educational and Cultural Trust Fund of the Electrical Industry (the "E&C"), the Annuity Plan of the Electrical Industry ("ANN"), and the Health Reimbursement Account Plan of the Electrical Industry ("HRAP"), the Deferred Salary Plan of the Electrical Industry (the "DSP"), and the Joint Apprenticeship and Training Program (the "JATP"), and the National Electrical Benefit Plan ("NEBF")(collectively the "ERISA Plans")."  (ECF No. 1, Pet. ¶ 4.)  Each of these plans are administrated in accordance with § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  (ECF No. 1, Pet. ¶ 6.)  The DSP is a "tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of § 401(k) of the Internal Revenue Code."  (ECF No. 1, Pet. ¶ 7.)

Petitioner alleges that Mechanical Electrical is a New York corporation engaged in the electrical contracting business and an employer within the meaning of Section 3(5) of ERISA and Section 501 of the LMRA.  29 U.S.C. § 1002(5); 29 U.S.C. § 142; (ECF No. 1, Pet. ¶ 13.)

In April 2019, the Parties entered into a collective bargaining agreement (the "CBA") effective beginning April 10, 2019.  (ECF No. 1, Pet. ¶ 17; ECF No. 1-1, Pet. Ex. A, LOA.)  On May 12, 2022, the Parties extended the coverage term of the CBA up to and including April 9, 2025.  (ECF No. 1-3, Pet. Ex. C, MOA at 1.)  The CBA binds the Parties to the "Policy for the Collection of Delinquent Contributions" (the "Collection Policy") and the "Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits" (the "Arbitration Procedures") and sets forth, *inter alia*, Mechanical Electrical's obligation to make required contributions to the ERISA Plans, the policy for collecting delinquent contributions, and a method for dispute resolution.  (*See* ECF No. 1, Pet. ¶¶ 21, 23-24; ECF No. 1-4, Pet. Ex. D, Collection Policy; ECF No. 1-5, Pet. Ex. E, Arbitration Procedures; ECF No. 1-3, Pet. Ex. 2, CBA.)

Under the terms of the CBA, Mechanical Electrical is required to provide benefit contributions to the ERISA Plans[2] and weekly

---

[2] These contributions include (1) contributions to each of the ERISA Plans, except the DSP, Union Assessment remittances, and Non-ERISA Plan Contributions (collectively the "JIB Contributions"); and (2) employee and employer

payroll[3] reports to Petitioner. (ECF No. 1, Pet. ¶¶ 5, 8-12, 20-21; ECF No. 1-8, Pet. Ex. H, Arb. Mem. ¶ 6.) The Arbitration Procedures provide for final and binding arbitration of all disputes between Petitioner and Mechanical Electrical related to Mechanical Electrical's obligation to contribute to the ERISA Plans, and specifies arbitrators eligible to hear such disputes. (ECF No. 1-5, Pet. Ex. E, Arbitration Procedures at 2.) The Arbitration Procedures also state that Mechanical Electrical is liable for the arbitrator's fees and Petitioner's attorney's fees and costs should the arbitrator find in whole or in part for Petitioner. (ECF No. 1-5, Pet. Ex. E, Arbitration Procedures at 8.)

Petitioner alleges that Mechanical Electrical violated the CBA by failing to submit payroll reports and remit required contributions to the ERISA Plans for the payroll weeks of (1) November 10, 2021, through December 29, 2021, and (2) the payroll weeks of January 5, 2022, through February 2, 2022. (ECF No. 1, Pet. ¶ 30.) In response to the alleged violation, Petitioner delivered to Mechanical Electrical, a written demand to arbitrate the grievance by written submission. (ECF No. 1, Pet. ¶ 31; ECF

contribution to the DSP (collectively the "DSP Contributions"). (ECF No. 1 ¶¶ 5, 8-12.)

[3] The "weekly payroll reports" were required to "provide the name, gross wages, and hours worked for each worker employed by the company on whose behalf these contributions are made." (ECF No. 1, Pet. ¶ 20.)

4

No. 1-6, Pet. Ex. F, Not. of Intent to Arbitrate.)

An arbitration hearing by written submission was held on December 21, 2023 before the designated arbitrator. (ECF No. 1-7, Pet. Ex. G, Not. of Adj. at 2.) Mechanical Electrical did not submit a written response to Petitioner's claims and did not appear. (ECF No. 1-10, Pet. Ex. J, Award at 4 n.1.) Prior to the arbitration hearing, however, Mechanical Electrical executed a Stipulation Admitting Facts in which Mechanical Electrical agreed, *inter alia*, that it owed Petitioner contribution delinquencies, "including the audit delinquencies sought [through arbitration]." (ECF No. 1-10, Pet. Ex. J, Award at 7 n.4.)

On January 2, 2024, the arbitrator found in Petitioner's favor and determined Mechanical Electrical violated the CBA, ERISA, and the LMRA by "failing to timely remit contributions required by the CBA for the payroll periods ending November 10, 2021 through December 6, 2023." (ECF No. 1-10, Pet. Ex. J, Award at 7.) Accordingly, the arbitrator awarded Petitioner a total Arbitration Award of $359,232.77 (the "Arbitration Award") comprised of the principal sum of delinquent contributions, interest on the principal sum, liquidated damages, attorney's fees and costs, and the arbitrator's fee, and ordered Mechanical Electrical to submit outstanding payroll reports. (ECF No. 1-10, Pet. Ex. J, Award at 8-9.) Under the Arbitration Award, "[i]nterest shall continue to accrue on the principal amounts owed until paid in full" and

Mechanical Electrical is liable for all costs, "including reasonable attorney's fees, incurred by [Petitioner] in enforcing [the arbitrator's] Opinion and Award." (ECF No. 1-10, Pet. Ex. J, Award at 8-9.)

Under the Arbitration Award, Petitioner could also adjust the amounts owed by Mechanical Electrical based on the submission of payroll reports. (ECF No. 10-10, Pet. Ex. J, Award at 9 n.6.) On or about January 8, 2024, Mechanical Electrical submitted the "outstanding payroll reports for payroll weeks ending November 10, 2021 through and including December 6, 2023." (ECF No. 1, Pet. ¶ 45.) Based on these payroll reports and pursuant to the Award, Respondent owes a Revised Arbitration Award amount of $234,981.62 as follows: (1) a principal amount in delinquent JIB contributions of $131,207.79; (2) a principal amount in delinquent Deferred Salary Plan of the Electrical Industry ("DSP") contributions of $7,324.60; (3) DSP interest of $792.98; (4) JIB interest of $12,573.14; (5) additional JIB interest of $28,276.40; (6) liquidated damages of $52,556.71; and (7) attorney's fees, costs, and arbitrator's fees of $2,250.00. (ECF No. 1, Pet. ¶ 46; ECF No. 1-11, Pet. Ex. K, Revised Summary of Award Balance.)

Mechanical Electrical has made payments of $13,366.12 towards the DSP interest of $792.28 and JIB interest of $12,573.14, but has failed to otherwise satisfy the Award, leaving an outstanding balance of $221,615.50. (ECF No. 1, Pet. ¶ 47.) The Award has

not been vacated or modified, and no application for such relief is pending.  (ECF No. 1, Pet. ¶ 49.)

## **LEGAL STANDARD**

"Because arbitration awards are not self-enforcing, they must be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (internal quotation omitted). Federal courts have jurisdiction over the enforcement of arbitration awards under Section 301 of the LMRA, 29 U.S.C. § 185. *Gen. Drivers, Warehousemen & Helpers, Loc. Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963); *Loc. 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998).

Where, as here, a respondent fails to appear, a motion to confirm an award and the accompanying record should be "treated as akin to a motion for summary judgment based on the movant's submissions." *D.H. Blair*, 462 F.3d at 109.  Because the court will treat Petitioner's motion as a motion for summary judgment, it has considered petitioner's pleadings, declarations, affidavits, and other documentary evidence annexed to the motion. (*See* ECF No. 1, Pet. & Exhibits; ECF No. 4, Pet. Mem. in Supp. ("Pet. Mem.").)

## DISCUSSION

**I.    Confirmation of the Award**

Confirmation of an arbitration award "is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair*, 462 F.3d at 110 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). As a result, "arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir. 1997) (internal quotation and citation omitted). "Only a barely colorable justification for the outcome reached by the arbitrator is necessary to confirm the award." *D.H. Blair*, 462 F.3d at 110 (internal quotation omitted). "It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (internal quotation and citation omitted); *see also STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011) ("the showing required to avoid confirmation is very high").

The evidentiary record before the Court supports confirmation of the Award and entry of judgement against Mechanical Electrical.

8

The CBA was effective during the period of the alleged violation, and Petitioner submitted the dispute to arbitration by written submission in accordance with the terms of the CBA. (*See* ECF No. 1-6, Not. of Intention to Arbitrate; ECF No. 1, Pet. ¶¶ 31-35; ECF No. 1-5, Pet. Ex. E, Arbitration Procedures.) Indeed, under the Parties' agreements, the arbitrator has jurisdiction to determine disputes regarding an "[e]mployer's obligation to contribute to the Funds, including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorneys' fees and costs." (ECF No. 1, Pet. ¶ 28.)

The arbitrator reviewed Petitioner's prehearing memorandum of law and corresponding exhibits that "set forth in detail the basis of [Mechanical Electrical's] obligation to pay contributions to the [ERISA] Plans" and noted that Mechanical Electrical failed to submit a written submission or otherwise respond to Petitioner's claims for delinquent benefits. (ECF No. 1-10, Pet. Ex. J, Award at 6.) Moreover, Mechanical Electrical executed a Stipulation Admitting Facts recognizing it owed Petitioner contribution delinquencies, "including the audit delinquencies sought [through arbitration]." (ECF No. 1-10, Pet. Ex. J, Award at 7 n.4.) Having reviewed the record evidence, the arbitrator concluded that Mechanical Electrical "violated the CBA, ERISA, and the LMRA by "failing to timely remit contributions required by the CBA for the payroll periods ending November 10, 2021 through December 6, 2023"

and granted an Arbitration Award to Petitioner. (ECF No. 1-10, Pet. Ex. J, Award at 7-9.)

There is no evidence that the arbitrator acted arbitrarily or contrary to law, exceeded his authority, or that the Award was subsequently vacated, corrected, or otherwise modified. *See e.g.*, *Beijing Shougang Mining Inv. Co., Ltd. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021)(stating that a reviewing court should only overturn an arbitration award if the arbitrator acted in manifest disregard of the law). Accordingly, the Arbitration Award is confirmed for the remaining balance of $221,615.50 as follows: (1) the principal balance of delinquent JIB contributions totaling $131,207.79; (2) the principal balance of delinquent DSP contributions totaling $7,324.60; (3) interest on the principal balance of delinquent JIB contributions up to the date of the Arbitration Award totaling $28,276.40; (4) liquidated damages of $52,556.71; and (5) attorney's fees, costs, and arbitrator's fees of $2,250.00. (ECF No. 1, Pet. ¶¶ 46-47; ECF No. 1-11, Pet. Ex. K, Revised Summary of Award Balance.)

## II. Attorney's Fees

In addition to confirmation of the Award, Petitioner seeks an award of $2,667.50 in attorneys' fees and $521.85 in costs incurred to bring the Petition. (ECF No. 1, Pet. ¶¶ 57-58.) The Collection Policy and Award provide for such a remedy. The Collection Policy provides that, once legal action is commenced against a delinquent

10

employer, that employer is liable for attorneys' fees and costs. (ECF No. 1-4, Pet. Ex. D, Collection Policy at 5.)  Under the Award, Mechanical Electrical is "responsible for any costs, including reasonable attorney's fees, incurred by [Petitioner] in enforcing [the arbitrator's] Opinion and Award."  (ECF No. 1-10, Pet. Ex. J, Award at 9.)

A court may calculate reasonable attorneys' fees, also known as the "lodestar," by multiplying a "reasonable hourly rate" by a "reasonable number of hours extended on the work."  *Match Grp., LLC v. Beazley Underwriting Ltd.*, No. 22-cv-4629 (LGS) (SLC), 2023 WL 9603886, at *6 (S.D.N.Y. Dec. 21, 2023) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182 (2d Cir. 2008)).  Based on the Court's calculation of the lodestar, and for the reasons set forth below, the Court grants Petitioner a modified award of $1,099 in attorneys' fees and $521.85 in costs.

### A.    Reasonable Hourly Rate

When determining the reasonable hourly rate, courts consider the "prevailing market rates in the community" as the rate a "reasonable, paying client would have paid."  *Lynch v. Town of Southampton,* 492 F. Supp. 2d 197, 210-11 (E.D.N.Y. 2007) (citing *Blum v. Stenson,* 465 U.S. 886, 895 (1984)); *Arbor Hill*, 522 F.3d at 191.  The "community" is defined as the district in which the court sits, but courts may consider an "out-of-district hourly

rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *See Arbor Hill,* 493 F.3d at 191; *Lynch,* 492 F. Supp. 2d at 210-11; *Polk v. N.Y. State Dep't of Corr. Serv.,* 722 F.2d 23, 25 (2d Cir. 1983) (same). "After determining the amount of the presumptively reasonable fee, the court may use its discretion to increase or reduce the amount based on the particular circumstances of the case." *Emerald Invs., LLC v. Porter Bridge Loan Co.,* No. 05-cv-1598 (JCH), 2007 WL 1834507, at *5 (E.D.N.Y. Jun 25, 2007) (quoting *Chan v. Sung Yue Tung Corp.,* No. 03-cv-6048 (GEL), 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007)).

In the Eastern District of New York, hourly rates in similar cases range from approximately $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and up to $90 for paralegals. *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. IKNA Constr. LLC*, No. 24-cv-561, 2025 WL 447731, at *17 (E.D.N.Y. Jan. 15, 2025) (quoting *Trs. of Plumbers Loc. Union No. 1 Welfare Fund v. Tri-C Mech. Inc.*, No. 22-cv-1590 (AMD) (PK), 2024 WL 4290823, at *15 (E.D.N.Y. Sept. 10, 2024), *report and recommendation adopted*, 2024 WL 4287353 (E.D.N.Y. Sept. 25, 2024) (determining reasonable hourly rates for attorneys in an action seeking to recover

delinquent employer contributions to employee benefit plans).

Here, the court finds that the proposed rate of $410 per hour requested by Ms. Adrianna R. Grancio—a partner at Virginia & Ambinder ("V&A") who regularly represents multiemployer benefit plans in ERISA and LMRA litigation—to be reasonable and within the higher range of hourly rates awarded to partners in this District. *See Trs. of Pavers*, 2025 WL 447731, at *17 (awarding Ms. Grancio an hourly rate of $333, but finding an hourly rate of up to $450 to be reasonable for partners in ERISA and LMRA cases).

The Court does not, however, find that the proposed hourly rate of $310 for Ms. Allison Herstic to be reasonable. Although Ms. Herstic has passed the New Jersey State Bar Examination, her admission to the bar is still pending and "[j]udges in this district generally compensate law clerks at the same rate as paralegal assistants." *Burkett v. Houslanger & Assocs., PLLC*, No. 19-cv-2285 (EK) (JO), 2020 WL 7000188, at *3 (E.D.N.Y. July 23, 2020) (citations omitted); *see also Dajbabic v. Rick's Cafe*, 995 F. Supp. 2d 210, 213 (E.D.N.Y. 2014) (reducing the hourly rate for a law clerk working before admission to the bar from $100 to $75); (ECF No. 1, Pet. ¶ 54.) Accordingly, the Court reduces Ms. Herstic's hourly rate to $90. *See Trs. Of Pavers*, 2025 WL 447731, at *18 (awarding legal assistants at V&A $90 per hour). The Court also reduces the proposed hourly rate for Ms. Eva Keating, a legal assistant, from $155 to $90. *Id.* (reducing proposed hourly rate

13

for legal assistants at V&A from $132 per hour to $90 per hour).

**B.  Hours Reasonably Expended**

The Court next turns to the issue of whether the number of hours expended by Petitioner's counsel was reasonable. A party seeking attorneys' fees "must support that request with contemporaneous time records that show 'for each attorney, the date, the hours expended, and the nature of the work done.'" *Cablevision Sys. N.Y. City Corp. v. Diaz,* No. 01-cv-4340 (GEL) (FM), 2002 WL 31045855, at *5 (S.D.N.Y. Jul. 10, 2002) (quoting *N.Y. State Ass'c for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1154 (2d Cir. 1983)); *see also Kingvision Pay-Per-View, Ltd. v. The Body Shop,* No. 00-cv-1089 (LTS) (KNF), 2002 WL 393091, at *5 (S.D.N.Y. Mar. 13, 2002) (denying award of attorneys' fees where information regarding how the hours expended resulted in the requested fees was not provided even though the requested amount of $1,000 was reasonable).  The number of hours claimed must not be "excessive or duplicative." *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 764 (2d Cir. 1998); *see also Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983) (directing district courts to exclude hours not "reasonably expended").

Petitioner has provided the Court with detailed contemporaneous time records documenting the hours worked by the attorneys and legal assistant on this matter, and describing the work performed.  Based on these records, Petitioner seeks

14

compensation for a total of 8.3 hours of work on this matter from November 14, 2024 to November 18, 2024. (ECF No. 1-12, Pet. Ex. L, Billing Records.) Having carefully examined the billing records, the Court finds that the number of hours charged in this matter is "reasonable given the amount of work performed and the fact that the case involves . . . relatively straightforward ERISA [and LMRA] claim[s]." *Trs. of the 1199 SEIU Health Care Emps. Pension Fund v. Traymore Chemists, Inc.*, No. 13-cv-4070 (MKB), 2014 WL 4207589, at *13 (E.D.N.Y. June 25, 2014).

### C. Calculating Attorneys' Fees and Costs

Accordingly, based on the hourly rates set forth above, and the number of hours billed on this matter, the Court awards $1,099 in attorney's fees calculated as follows:

| Name | Hourly Rate | Hours | Total |
|------|-------------|-------|-------|
| Adrianna R. Grancio | $410.00 | 1.1 | $451.00 |
| Allison Herstic | $90.00 | 7.1 | $639.00 |
| Eva Keating | $90.00 | 0.1 | $9.00 |
| **Total** | | **8.3** | **$1,099.00** |

Petitioner also requests $521.85 in court filing fees and service charges. (ECF No. 1, Pet. ¶ 58.) Under Section 502(g)(2)(D) of ERISA, petitioners are entitled to recover reasonable costs. *See* 29 U.S.C. § 1132(g)(2)(D). "Filing fees and service of process fees are specifically included in the statute, and therefore, [Petitioner] here may recover them." *See Trs. Of*

*the 1199*, 2014 WL 4207589 at *13 (citing 28 U.S.C. § 1920; *Finkel v. Triple A Group, Inc.,* 708 F. Supp. 2d. 277, 290 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service, postage, and photocopying)). Based on a review of the record, the Court finds these costs to be reasonable and compensable and awards $521.85 in costs.

### III. Interest

The Arbitration Award accounts for interest owed on the principal amount of delinquent contributions up to the date of the Arbitration Award. (*See* ECF No. 1-10, Pet. Ex. J, Award at 8-9.) Although Petitioner did not request pre-judgment interest from the date of the Arbitration Award to the date of judgment, the Court has discretion to award pre-judgment interest on its own motion and does so here. *See Rhodes v. Davis*, 628 F. App'x 787, 793 n.2 (2d Cir. 2015) (summary order).

District courts in the Second Circuit have exercised their discretion to award pre-judgment interest when confirming arbitration awards under collective bargaining agreements under Section 301 of the LMRA where the relevant agreement indicated that an arbitration award would be "final and binding." *See, e.g., Riverbay Corp. v. Serv. Emps. Int'l Union, Local 32BJ*, No. 22-cv-10944 (LJL), 2023 WL 3738984, at *10 (S.D.N.Y. May 31, 2023). Indeed, the Second Circuit recognizes a presumption in favor of pre-judgment interest for arbitration awards. *N.Y. City &*

16

*Vicinity Dist. Council of Carpenters v. Golden Dev. & Constr. Corp.*, No. 15-cv-4462 (KAM) (JO), 2016 WL 4523927, at *3 (E.D.N.Y. Aug. 22, 2016) (citing *Waterside Ocean Nav. Co. v. Int'l Nav. Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984)).

The LMRA does not provide a pre-judgment interest rate; however, in awarding interest, the Court may look to state law to determine the appropriate rate. *N.Y. City Dist. Council of Carpenters v. Tried N True Interiors LLC*, No. 20-cv-51 (LGS), 2020 WL 1809323, at *4 (S.D.N.Y. Apr. 9, 2020). The common practice within this Circuit is to grant interest at a rate of nine percent per annum under New York state law "from the time of the award to the date of the judgment confirming the award." *1199SEIU United Healthcare Workers East v. Alaris Health at Hamilton Park*, No. 22-cv-531 (LJL), 2022 WL 1080707, at *5 (S.D.N.Y. Apr. 11, 2022); N.Y. C.P.L.R. §§ 5001–04.

Here, the Arbitration Procedures provide that "the [arbitrator's] award shall be final and binding." (ECF No. 1-5, Pet. Ex. E, Arbitration Procedures at 7.) Accordingly, the Court will award prejudgment interest on (1) the principal amount of delinquent JIB contributions totaling $131,207.79 and (2) the principal amount of delinquent DSP contributions totaling $7,324.60, from January 2, 2024, the date of the Arbitration Award, to the date of judgment confirming the award at the rate of nine percent per annum.

Additionally, Petitioner is entitled to post-judgment interest at the federal statutory rate as of right. *See* 28 U.S.C. § 1961.

**CONCLUSION**

For the reasons set forth above, the Arbitration Award is confirmed. Petitioner is awarded judgment against Respondent in the amount of $221,615.50 as follows: 1) the principal amount of delinquent JIB contributions totaling $131,207.79; (2) the principal amount of delinquent DSP contributions totaling $7,324.60; (3) interest calculated up to the date of the Arbitration Award on the principal amount of delinquent JIB contributions totaling $28,276.40; (4) liquidated damages of $52,556.71; and (5) attorney's fees, costs, and arbitrator's fees of $2,250.00.

Petitioner is also entitled to pre-judgment interest on the principal amount in delinquent JIB contributions and delinquent DSP contributions at the rate of nine percent per annum from January 2, 2024, the date of the Arbitration Award, to the date judgment is entered, in an amount to be calculated by the Clerk of Court. Petitioner shall be awarded post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a) from the date judgment is entered until the date judgment is paid in full.

Petitioner is directed to serve a copy of this Memorandum and Order upon Respondent and to note service on the docket within

seven days of the date of this Memorandum and Order.  The Clerk of Court is respectfully requested to enter judgment against Respondent in accordance with this Memorandum and Order and to close this case.

**So ordered.**

Dated:   October 10, 2025
         Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York